UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COREY VALDEZ BURCH,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

DECISION & ORDER

17-CV-1252P

## PRELIMINARY STATEMENT

Plaintiff Corey Valdez Burch ("Burch") brings this action pursuant to Section 205(g) of the Social Security Act , 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 8).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 13). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Burch's motion for judgment on the pleadings is denied.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II. **Burch's Contentions**

Burch contends that the ALJ's determination that he is not disabled is not supported by substantial evidence. (Docket ## 10-1; 14). First, Burch contends that the ALJ's physical Residual Functional Capacity ("RFC") assessment is not based upon substantial evidence because she discounted the only medical opinions of record. (Docket ## 10-1 at 7-13; 14 at 1-3). According to Burch, the ALJ erred by failing to offer good reasons for discounting the medical opinions of his treating physician, Eileen Kosieracki ("Kosieracki"), DO. Further, Burch contends that by discounting Kosieracki's opinion and the opinion of consulting examiner Harbinder Toor ("Toor"), MD, the ALJ's RFC assessment is not supported by a medical opinion of Burch's functional capacities and thus is unsupported by substantial evidence. (*Id.*). Finally, Burch maintains that the ALJ's conclusion that his activities of daily living undercut his claim for disability lacks support in the record. (Docket ## 10-1 at 13-16; 14 at 3).

III. **Analysis**

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities

4

on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)).[1] Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order) ("the ALJ [must] give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence"). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician, because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider:

---

[1] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

5

> (1) the frequency of examination and length, nature, and extent of the treatment relationship,
>
> (2) the evidence in support of the physician's opinion,
>
> (3) the consistency of the opinion with the record as a whole,
>
> (4) whether the opinion is from a specialist, and
>
> (5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199. The regulations also direct that the ALJ should "give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)). "Even if the above-listed factors have not established that the treating physician's opinion should be given controlling weight, it is still entitled to deference, and should not be disregarded." *Salisbury v. Astrue*, 2008 WL 5110992 at *4. The same factors should be used to determine the weight to give to a consultative physician's opinion. *Tomasello v. Astrue*, 2011 WL 2516505, *3 (W.D.N.Y. 2011). "However, if the treating physician's relationship to the claimant is more favorable in terms of the length, nature and extent of the relationship, then the treating physician's opinion will be given more weight than that of the consultative examining physician." *Id.*

Between January 2015 and October 2016, Kosieracki authored five opinions assessing Burch's work-related physical limitations. (Tr. 288-89, 291-98, 331-32). Generally, Kosieracki indicated that Burch suffered from spina bifida occulta and low back pain and that he had been referred to a specialist and to physical therapy. (*Id.*). She assessed that he was moderately limited in his ability to walk, stand, sit, lift, carry, push, pull, bend, climb, and function in a work setting at a consistent pace, primarily due to his chronic back pain. (*Id.*). According to Kosieracki, Burch should avoid engaging in prolonged walking, standing, and

sitting. (*Id.*). She repeatedly noted that Burch had failed to engage in physical therapy as recommended or to follow up with a spine specialist. (*Id.*). Her last opinion dated October 6, 2016, however, noted that he had attempted physical therapy without improvement. (Tr. 332).

Toor conducted a physical examination of Burch on May 21, 2015. (Tr. 267-71). He noted that Burch complained of constant, dull, achy pain in his lower back that was sometimes sharp and sometimes radiated to his left leg and sometimes caused tingling and numbness in his foot. (*Id.*). Burch indicated that the pain caused difficulty standing, walking, sitting, bending, and lifting. (*Id.*). Burch reported that he was able to care for his personal hygiene and prepare quick meals; contrary to the function report he submitted in connection with his application for benefits, Burch reported to Toor that he did not engage in any cleaning, laundry, shopping, or child care. (*Compare* Tr. 221-31 *with* Tr. 267).

According to Toor, upon examination, Burch appeared to be in moderate pain, walked with a slight limp, declined to walk on his heels and toes, squatted to twenty percent of full, and had difficulty getting out of the chair and onto the examination table, but did not need any assistance to change for the examination and did not use an assistive device. (Tr. 267-71). With the exception of some range of motion limitations in Burch's lumbar spine, a positive straight leg raise, and some numbness and tingling in Burch's feet, the physical examination produced essentially normal findings. (*Id.*). Toor reviewed imaging of Burch's lumbar spine and noted that it demonstrated straightening. (*Id.*). Toor opined that Burch had moderate to mild limitations for standing, walking, bending and lifting, and moderate limitations for prolonged sitting. (*Id.*). He also indicated that pain sometimes interfered with Burch's balance. (*Id.*).

Burch contends that the ALJ improperly determined that he retained the ability to perform the exertional requirements of light work during an eight-hour workday. (Docket

7

## 10-1 at 7-13; 14 at 1-3).  He alleges that this determination is erroneous because it is inconsistent with the limitations assessed by both Kosieracki and Toor.  (*Id.*).  Even assuming that the ALJ properly discounted the opinions of Kosieracki and Toor, Burch further argues, the ALJ's determination that he can perform the requirements of light work is not supported by substantial evidence because no medical opinion of record exists supporting his ability to engage in work-related activity during an eight-hour workday.  (*Id.*).

As an initial matter, although some courts have found that moderate limitations for exertional work activities such as prolonged sitting, walking, standing, lifting, pushing, and pulling may be inconsistent with an ability to perform the full range of light work,[2] other courts have concluded otherwise.  *See Alianell v. Colvin*, 2016 WL 981864, *13 (W.D.N.Y. 2016) ("[s]ome courts, including this [c]ourt, have held that 'an opinion assessing moderate limitations for sitting, standing and walking is not necessarily inconsistent with a determination that a claimant can perform the requirements of light or medium work,' while other courts have held that 'moderate or severe limitations in prolonged walking are inconsistent with full range light or medium work'") (quoting *Harrington v. Colvin*, 2015 WL 790756, *14 (W.D.N.Y. 2015) (collecting cases) (brackets omitted)); *Gurney v. Colvin*, 2016 WL 805405, *3 (W.D.N.Y. 2016) (moderate physical limitations identified by physician were accounted for by limitation to light work) (collecting cases).  In this case, I find that Burch's ability to engage in the exertional requirements of light work is supported by other substantial evidence in the record, and the ALJ provided reasons "tending to support the finding that, despite the moderate limitations[,] . . .

---

[2] Light work requires approximately six hours of standing and/or walking during an eight-hour workday. *See* 20 C.F.R. § 416.967(b); *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) ("[l]ight work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and walk for up to 6 hours a day, and sit for up to two hours").

8

[plaintiff] could still perform light work." *See Carroll v. Colvin*, 2014 WL 2945797, \*4 (W.D.N.Y. 2014).

In making her determination, the ALJ discussed Burch's minimal treatment history, including his substantial noncompliance with recommended treatment, as well as Burch's statements concerning his activities of daily living. (Tr. 20-22). For instance, as noted by the ALJ, Burch received relatively minimal treatment for his back impairment and largely failed to comply with treatment recommendations. Although Kosieracki's treatment notes are handwritten and difficult to decipher, they demonstrate that Burch first sought treatment for back pain in January 2015. (Tr. 264). At that time, he was diagnosed with spina bifida occulta and used various prescription medication to address his pain. (Tr. 262-65, 273-77). He was eventually prescribed Gabapentin, which helped to alleviate his pain. (Tr. 277). Although he continued to keep appointments with Kosieracki throughout 2015 and 2016, initially on a monthly and eventually on a quarterly basis, her medical source statements reflect that he failed to follow her treatment recommendations of physical therapy and follow-up with the spine specialist. (Tr. 273-77, 288-98, 304-24).

Burch was evaluated by spine specialist, Joanne Wu ("Wu"), MD, in November 2015, who assessed full range of motion in the lumbar spine and a negative straight leg raise. (Tr. 312-15). Wu's treatment records reveal that, despite her recommendation that Burch engage in physical therapy and return in six weeks, he did not participate in physical therapy and did not return for further treatment with Wu until June 2016. (Tr. 300-02). At that time, Wu examined Burch and observed essentially normal findings, with some tenderness of the lumbar region. (*Id.*). She again recommended that Burch attempt physical therapy and then follow up with her for further treatment. (*Id.*).

Although Burch finally attempted physical therapy between July and September 2016, he did so far less frequently than recommended – instead of attending treatment sessions twice weekly as recommended, he attended only six sessions over the three-month period. (Tr. 323, 325-26, 328-29). He was discharged by his physical therapist, who observed that he did not appear to have improved with the limited therapy in which he had engaged. (*Id.*). Nothing in the record suggests that he returned to Wu after his discharge from physical therapy, as she had instructed.[3] (Tr. 302).

Moreover, as the ALJ explained, her determination as to Burch's physical capabilities is supported by his own statements concerning his broad range of activities of daily living. (Tr. 20-21). According to Burch, he continues to be able to drive, although only for limited distances, cook, clean, shop, and care for his personal hygiene and for his seven-year-old daughter. (Tr. 20). Any suggestion by Burch that the ALJ should not have considered his daily activities in formulating the RFC is incorrect. *See* 20 C.F.R. § 416.929(c)(3) (a claimant's "pattern of daily living" is an "important indicator of the intensity and persistence of [the claimant's] symptoms"); *Durante v. Colvin*, 2014 WL 4843684, *2 (D. Conn. 2014) (ALJ properly discussed plaintiff's activities of daily living when formulating RFC; "[w]hile [an] admonition as to the ill wisdom of relying thoughtlessly on evidence of a claimant's ability to manage activities of daily living . . . for the purpose of discrediting evidence of more serious-seeming RFC restrictions in the work context is well-taken, the ALJ does not appear to have erred in this way here"); *Prue v. Comm'r of Soc. Sec.*, 2014 WL 37669, *10 (D. Vt. 2014) ("[i]t was proper for the ALJ to consider [plaintiff's] daily activities in determining his RFC").

---

[3] During the hearing, Burch testified that he planned to return to Wu for further treatment, but that he did not have an appointment scheduled. (Tr. 44).

Contrary to Burch's contentions (Docket ## 10-1 at 13-15; 14 at 3), I do not find that the ALJ unduly emphasized or improperly considered Burch's activities in reaching her conclusions. Accordingly, although the ALJ stated that she disagreed with the limitations assessed by Kosieracki and Toor to the extent they were inconsistent with an ability to perform light work, I conclude that the limitations she assessed are nonetheless consistent with Kosieracki's and Toor's opinions and, in any event, are supported by substantial evidence in the record.

I further conclude that the ALJ provided "good reasons" for her decision to give less than controlling weight to Kosieracki's opinions concerning Burch's ability to engage in work-related activity. (Tr. 22). In her decision, the ALJ discounted Kosieracki's opinion on the grounds that it was inconsistent with other substantial evidence in the record. Specifically, the ALJ noted that the treatment records demonstrated essentially normal findings, that Burch's back pain was alleviated by medication, and that Burch had undergone minimal treatment to address his allegedly debilitating condition. (Tr. 20-22). On this record, I conclude that the ALJ did not violate the treating physician rule by discounting Kosieracki's opinions for the reasons she explained. *See Harrington v. Colvin*, 2015 WL 790756 at *16 (ALJ properly discounted treating physician opinion where it assessed limitations that were inconsistent with findings contained in the treatment records and with admissions claimant had made concerning his activities of daily living); *Wilferth v. Colvin*, 49 F. Supp. 3d 359, 362 (W.D.N.Y. 2014) (ALJ properly weighed treating physician opinion and "adequately explained her reasons for declining to grant controlling weight to his conclusion" where opinion was "inconsistent with other opinions in the record, as well as statements made by the plaintiff himself, and none of the objective test records . . . indicate[d] a level of disability greater than that reflected in the plaintiff's RFC, as

11

determined by the ALJ"); *Gladle v. Astrue*, 2008 WL 4411655, *5 (N.D.N.Y. 2008) (ALJ properly discounted opinion of treating physician where it was inconsistent with treatment records and objective findings of consultative examiner).

Burch contends that by discounting the opinions of Kosieracki and Toor, the ALJ created a gap in the record requiring remand. Although the ALJ accorded limited weight to both opinions, her RFC assessment nonetheless accounts for the majority of the limitations assessed by both doctors. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (ALJ not required to supplement record with medical source statement where ALJ rejected consultative examiner's opinion, but ultimately accounted in RFC for majority of limitations assessed by examiner). As discussed above, consistent with Kosieracki's and Toor's opinions that Burch suffered from limitations in his ability to walk, stand, sit, lift, carry, push, and pull, the ALJ restricted Burch to the exertional requirements of light work, a limitation consistent with the moderate limitations assessed by the physicians and the evidence in the record. Further, the ALJ's RFC accounted for the postural limitations assessed by Kosieracki. (Tr. 20, 288-89, 291-98, 331-32).

The only limitation identified by Kosieracki that *may* not have been accounted for by the ALJ's RFC assessment is the moderate limitation for performing at a consistent pace during the workday. First, the record is devoid of any evidence to support a finding that Burch suffers from significant limitations maintaining a consistent pace. Other than a vague reference in Burch's application for benefits that he sometimes has difficulty finishing certain chores due to pain (Tr. 228), no other evidence exists in the record to suggest that he is unable to remain on task as would be necessary to engage in work activity. Indeed, Burch indicated that he was able to engage in activities requiring concentration, such as reading and watching the news. (Tr. 225). In any event, the positions identified by the vocational expert and relied upon by the

12

ALJ at step five were all unskilled, requiring level two Specific Vocational Preparation ("SVP"). *See Cosme v. Colvin*, 2016 WL 4154280, *13 n.7 (W.D.N.Y. 2016) ("each of the positions identified at step five had an SVP of two, which is considered unskilled work") (citing SSR-04P, 2000 WL 1898704, *3 (S.S.A. 2000) ("unskilled work corresponds to an SVP of 1-2")); DOT 559.687-074, 1991 WL 683797 (1991) (Inspector and Hand Packager), DOT 239.567-010, 1991 WL 672232 (1991) (Office Helper), DOT 209.587-034, 1991 WL 671802 (1991) (Marker). Such unskilled positions adequately account for any moderate concentration deficits identified by Kosieracki. *See*, *e.g.*, *Martinez v. Comm'r of Soc. Sec.*, 2017 WL 2633532, *7 (N.D.N.Y. 2017) (finding RFC determination for unskilled work is not necessarily inconsistent with moderate mental limitations); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) (finding RFC determination limiting claimant to simple, routine, repetitive tasks was consistent with ALJ's assessment that claimant had moderate difficulties with concentration, persistence and pace). Accordingly, I conclude that the ALJ's RFC assessment adopted the limitations assessed by Kosieracki and Toor that were supported by the evidence and that her decision to accord the opinions limited weight did not create a gap in the record. *See Pellam v. Astrue*, 508 F. App'x at 90.

Moreover, I conclude that the ALJ's RFC assessment was supported by substantial evidence. The record reflects that although Burch sought treatment for his back pain, his treating physicians repeatedly found minimal objective abnormalities and recommended a conservative course of treatment. Wu's physical examination of Burch indicated that he was not in acute distress and that he had full range of motion in his lumbar spine and his extremities. (Tr. 314). Despite Wu's recommendation, Burch did not engage in physical therapy and, when he eventually did, his attendance was far below the recommended frequency. (Tr. 323, 325-26,

13

328-29). Further, nothing in the record indicates that Burch contacted Wu for further treatment after discharge from physical therapy, as Wu and Kosieracki had both recommended. Despite Burch's complaints of debilitating pain, he was able to engage routinely in daily activities, including caring for his personal hygiene, managing his household, and caring for his young daughter. The ALJ's RFC accounted for Burch's physical impairments by limiting him to light work with postural limitations. Thus, the ALJ's RFC assessment was reasonable and supported by substantial evidence.

## CONCLUSION

This Court finds that the Commissioner's denial of SSI/DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED**. Burch's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and Burch's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
       February 26, 2019